## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

TIMOTHY TIMMONS,

        Plaintiff,

    v.

OFFICER MARTIN; UNIT MANAGER
MCFARLIN; and MR. CLARK,[1]

        Defendants.

CIVIL ACTION NO.: 6:17-cv-116

FILED
Scott L. Poff, Clerk
United States District Court

By mgarcia at 9:25 am, Nov 01, 2019

### ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is incarcerated at Ware State Prison in Waycross, Georgia, brought this action while he was incarcerated at Smith State Prison in Glennville, Georgia, to challenge certain conditions of his confinement under 42 U.S.C. § 1983. Doc. 1. The Court granted Plaintiff leave to proceed *in forma pauperis*. Docs. 2, 5. The Court initially deferred conducting frivolity review of Plaintiff's Complaint and directed him to file an Amended Complaint, which Plaintiff did. Docs. 8, 9. The Court again deferred conducting frivolity review of Plaintiff's Amended Complaint and again directed him to file an Amended Complaint. Doc. 12. Plaintiff filed his Second Amended Complaint on July 31, 2019, which is the operative Complaint. Doc. 13.

After conducting the requisite frivolity review of Plaintiff's Second Amended Complaint, I **RECOMMEND** the Court **DISMISS** Plaintiff's monetary damages claims against Defendants in their official capacities and his Americans with Disabilities Act claims and **DENY** Plaintiff

---

[1] In his Second Amended Complaint, Plaintiff makes clear he only intends to name Martin, McFarlin, and Clark as Defendants. Doc. 13. The Court **DIRECTS** the Clerk of Court to amend the docket and record in this case to reflect Plaintiff's intent.

leave to appeal *in forma pauperis* as to these claims.  However, I **FIND** that Plaintiff's deliberate indifference and negligence claims shall proceed.  Consequently, a copy of Plaintiff's Second Amended Complaint, doc. 13, and a copy of this Order shall be served upon Defendants Martin, Clark, and McFarlin by the United States Marshal without prepayment of cost.

## BACKGROUND[2]

On November 17, 2015, Plaintiff was placed on a medical profile that required him to be housed in a bottom tier cell and on a bottom bunk.  Doc. 13 at 7.  This profile appears to be attributed to a "back injury" and was to be in place "until further evaluated by provider."  Id.  On December 22, 2015, upon re-arrival to Smith State Prison, Plaintiff presented the medical profile to Defendant Martin.  Doc. 13 at 7.  Defendant Martin, whose role it was to make housing decisions, assigned Plaintiff a top bunk on the second floor, despite having knowledge of the medical profile.  Id.  On December 29, 2015, while still at Smith State Prison, Plaintiff was given an additional medical profile that also required Plaintiff be given a bottom bunk and excused him from climbing or heights.  Id.

On January 12, 2016, Plaintiff informed his treating physician, Dr. Gardner, that his medical profiles were not being followed.  Id. at 8.  Dr. Gardner then called Defendant Martin to inform her that housing on the ground floor in a bottom bunk was imperative for Plaintiff's health and safety.  Id.  At some point after this phone call, Defendant Martin reassigned Plaintiff to a bottom bunk but not in a ground floor cell.  Id.

On June 8, 2016, Plaintiff was referred to an orthopedic specialist, allegedly because the conditions of his confinement had caused his health to deteriorate.  Id.  This specialist prescribed

---

[2]     During frivolity review under 28 U.S.C. § 1915A, "[t]he complaint's factual allegations must be accepted as true."  Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017).

Plaintiff a walking cane and added an additional medical profile that prohibited Plaintiff from prolonged standing.  Id. at 8–9.  On June 27, 2016, after returning from the specialist appointment, Plaintiff was climbing the stairs up to his cell when he was struck with a sharp pain in his leg.  Id. at 9.  The sharp pain made his legs buckle, causing him to fall down the flight of stairs.  Id.  Plaintiff was sent to the emergency room for his injuries.  Id.  Plaintiff was in a wheelchair upon discharge from the ER; however, he was still assigned to a second-floor cell for approximately 13 days following his discharge.  Id.  Plaintiff alleges that for about six months in total, his conditions were not in compliance with his medical profile.  Id.  Plaintiff alleges this non-compliance, along with his fall, caused permanent and debilitating injuries.  Id.  Specifically, Plaintiff alleges the non-conforming housing and his fall caused spinal stenosis and caused his existing herniated disk to "bulge" out further, causing him "enormous amounts of excruciating pain."  Id. at 6.  To treat these injuries, Plaintiff received an epidural, cortisone shot, chronic pain medication, and steroidal anti-inflammatory medicine.  Id.  Plaintiff also underwent surgery and had physical therapy.  Id.

Plaintiff alleges he repeatedly told Defendant Clark, a deputy warden, that his medical profile was not being followed.  Id. at 12.  Defendant Clark told Plaintiff to fill out an inmate request form, which Plaintiff then did, to no avail.  Id.  Plaintiff also alleges that on June 8, 2016, he informed Defendant McFarlin, a unit manager, that his medical profile was not being followed.  Id. at 13–14.  Defendant McFarlin took down Plaintiff's information and said he would speak to Defendant Martin, but no housing changes were made until Plaintiff's fall 18 days later.  Id. at 14.

As relief, Plaintiff requests: (1) compensatory damages measured in light of past, present, and future "physical pain, mental anguish, suffering, emotional distress, and disability"; and (2) punitive damages.  Id. at 15.

## STANDARD OF REVIEW

Plaintiff is bringing this action *in forma pauperis*.  Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets, shows an inability to pay the filing fee, and also includes a statement of the nature of the action which shows that he is entitled to redress.  Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous, malicious, or if it fails to state a claim upon which relief may be granted.  28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii).  Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity.  Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

When reviewing a complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances).  Further, a claim is frivolous under § 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'"  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010).  Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.  Twombly, 550 U.S. at 555.  Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed.  Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys . . . ." (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003))).  However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules.  McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

**DISCUSSION**

## I.    Plaintiff's Requested Relief

Plaintiff brings these claims against Defendants in both their individual and official capacities.  Doc. 13 at 2–3.  However, Plaintiff cannot sustain a § 1983 claim for monetary damages against Defendants in their official capacities.  States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty.  Alden v. Maine, 527 U.S. 706, 712–13 (1999).  Section 1983 does not abrogate the well-established immunities of a state from suit without its consent.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989).  Because a lawsuit against a state agency or a state officer in his official capacity is "no different from a suit against the [s]tate itself," such defendants are immune from suit under § 1983.  Id. at 71.

Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees of the Georgia Department of Corrections.  See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989).  Accordingly, the Eleventh Amendment immunizes Defendants from suit for monetary damages in their official capacities.  Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities for monetary relief.  However, to the extent Plaintiff successfully states a constitutional claim, he may seek injunctive relief against any Defendant in their official capacity.  Ex parte Young, 209 U.S. 123, 148–50 (1908).  Therefore, the Court should **DISMISS** all claims for monetary damages against Defendants in their official capacities under § 1983.  Plaintiff's requests for monetary damages shall continue against Defendants in their individual capacities.

## II.      Plaintiff's Deliberate Indifference to Serious Medical Need Claims

The cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994).  In the medical care context, the standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate.  Farmer, 511 U.S. at 828.  However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105).

To prove a deliberate indifference to medical needs claim, a prisoner must: (1) "satisfy the objective component by showing that [he] had a serious medical need"; (2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and (3) "show that the injury was caused by the defendant's wrongful conduct."  Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).

Here, Plaintiff alleges that his medical profile was not adhered to, exacerbating an existing herniated disc, and causing a fall that lead to permanent injuries.  Doc. 13 at 6.  He further alleges that at the outset he informed Defendant Martin, in detail, of his medical profile. Id. at 7.  Plaintiff notes that, at one point, a prison physician went so far as to call Defendant Martin to express the importance of following the medical profile.  Id.  Plaintiff also alleges he fully informed Defendants Clark and McFarlin of his medical needs and of Defendant Martin's neglect.  Id. at 12–13.  Plaintiff has adequately alleged an Eighth Amendment deliberate indifference claim against Defendants.[3]  See Howell v. White, No. 1:13-cv-1161, 2013 WL

---

[3]      Plaintiff makes additional claims for "cruel and unusual punishment" and "violation of a basic human need for the reasonable safety of the plaintiff."  Doc. 13 at 10, 13–14.  The factual contentions for

12216364, at \*1 (N.D. Ga. June 11, 2013) (finding plaintiff-prisoner's amended complaint stated an adequate deliberate indifference claim based on defendants' refusal to assign him to a bottom bunk).

Plaintiff also alleges that Defendant Martin's violations of his Eighth Amendment rights resulted in the "[i]ntentional [i]nfliction of [e]motional [d]istress." Doc. 13 at 11. Similarly, he alleges Defendant Clark's deliberate indifference caused him "mental anguish." Doc. 13 at 13–14. Due to their constitutional predicates, the Court will not construe these claims as independent state law claims. Instead, they should be considered as part of any future calculation of compensable damages. Wright v. Sheppard, 919 F.2d 665, 669 (11th Cir. 1990) (finding in a § 1983 action for false imprisonment, the court should consider evidence of pain, humiliation, emotional distress, and mental anguish when computing damages). Thus, Plaintiff's emotional distress claims against Defendant Martin shall proceed.

## III.   Plaintiff's Negligence Claims

Under 28 U.S.C. § 1367, district courts with original jurisdiction may exercise supplemental jurisdiction over all related claims that arise from the same "common nucleus of operative fact." City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 164–65 (1997). Plaintiff alleges Defendants were negligent in addressing his medical needs. Doc. 13 at 10, 12, 14. The Court construes these allegations as setting forth claims under state law for negligence. See O.C.G.A. § 51-1-2. A district court should apply state substantive law and federal procedural law when exercising supplemental jurisdiction over state law claims. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); McDowell v. Brown, 392 F.3d 1283, 1294 (11th Cir. 2004).

---

these claims are no different from those in deliberate indifference to serious medical need claims. Accordingly, the Court will construe them to be part of the deliberate indifference claims.

Here, Plaintiff has adequately alleged non-frivolous Georgia negligence claims against Defendants that arise from the same nucleus of operative facts.

**IV.     Plaintiff's Claims Under the Americans with Disabilities Act ("ADA")**

Title II of the ADA prohibits public entities from discriminating against disabled individuals, including prisoners in state correctional facilities.  See 42 U.S.C § 12132; Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998).  Of course, "only public entities are liable for violations of Title II of the ADA."  Edison v. Douberly, 604 F.3d 1307, 1308 (11th Cir. 2010) (citing Yeskey, 524 U.S. at 210); 42 U.S.C. § 12131.  Plaintiff does not name any specific "public entity" as Defendant.  Plaintiff instead brings his claims against specific state officers, acting in their official capacities.  Doc. 13 at 2–3.  As discussed above, a suit against Defendants acting in their official capacities, is in essence, a suit against a "public entity," the Georgia Department of Corrections.  Supra Pt. I.

The Eleventh Amendment bars damages actions against a state in federal court, unless there has been a waiver by the state or valid congressional override.  Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Unlike § 1983, Title II of the ADA abrogates state sovereign immunity, at least to the extent the Act creates a private cause of action against the States for conduct that violates both the ADA and the Fourteenth Amendment.  United States v. Georgia, 546 U.S. 151, 159 (2006).  Thus, in order for Plaintiff to successfully state a statutory ADA claim for monetary damages, for the conduct of state officers acting in their official capacities, he must also successfully state a predicate constitutional claim.  See id.; Slaughter v. Bryson, No. 5:15-CV-90, 2018 WL 1400976, at *21 (S.D. Ga. Mar. 20, 2018), *report and recommendation adopted sub nom.*, Slaughter v. Gramiak, 2018 WL 3536076 (S.D. Ga. Jul. 23, 2018).  Here, in assessing

state sovereign immunity, Plaintiff's surviving Eight Amendment claims can serve as the constitutional predicate for his statutory ADA claims, at this early stage.

To state a claim under Title II of the ADA, a plaintiff must allege that (1) he is a "qualified individual with a disability," (2) he was "excluded from participation in or . . . denied the benefit of the services, programs, or activities of a public entity," or otherwise "discriminated [against] by such entity," (3) "by reason of such disability."  42 U.S.C. § 12132.  In this case, Plaintiff has alleged that he is disabled; that Defendants are aware that Plaintiff is being denied the benefits of prison facilities—i.e., a medically suitable bed and the ability to access one's cell without great hardship; and that Defendants deliberately failed to act within the scope of their official capacities to remedy the situation.[4]  Based upon these allegations, at this early stage of litigation, Plaintiff's ADA claims against Defendants in their official capacities are not subject to dismissal.

However, it is settled that Title II of the ADA does not permit individual capacity suits. See Rylee v. Chapman, 316 F. App'x 901, 905 (11th Cir. 2009); Badillo v. Thorpe, 158 F. App'x 208, 211 (11th Cir. 2005).  Therefore, the Court should **DISMISS** all individual capacity claims against Defendants brought under Title II of the ADA.

---

[4]      The Eleventh Circuit has not directly ruled on whether bunk placement is a "service, program, or activity" that a person can be "denied the benefit of" under the ADA.  In United States v. Georgia, the Supreme Court recognized that "it is quite plausible that the alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted 'exclu[sion] from participation in or . . . deni[al of] the benefits of' the prison's 'services, programs, or activities," under Title II of the ADA.  Georgia, 546 U.S. at 157 (quoting 42 U.S.C. § 12132, and citing Yesky, 524 U.S. at 210).  Providing prisoners a bed, especially one medically prescribed, is arguably a service within the meaning of the ADA, as is access to one's cell.  See also Kiman v. N. H. Dep't of Corr., 451 F.3d 274, 290 (1st Cir. 2006) (concluding that the plaintiff presented sufficient evidence to defeat "summary judgment on whether defendants denied him access to . . . lower tier and bottom bunk placements, in violation of Title II").

### V.      Leave to Appeal *in Forma Pauperis*

Should the Court adopt these recommendations, the Court should also deny Plaintiff leave to appeal *in forma pauperis* as to any dismissed claims.  Though Plaintiff has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  Napier, 314 F.3d at 531; see also Brown v. United States, Nos. 4:07-cv-085, 4:03-cr-001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal as to the claims recommended for dismissal in this Report.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **DISMISS** Plaintiff's monetary damages claims against Defendants in their official capacities and his Americans with Disabilities Act claims.  I also **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis* as to those claims.  However, I **FIND** that Plaintiff's deliberate indifference and negligence claims shall proceed.  A copy of Plaintiff's Second Amended Complaint and attached exhibits, docs. 13, 1-1, and a copy of this Order shall be served upon Defendants Martin, Clark, and McFarlin by the United States Marshal without prepayment of cost.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

## REMAINING CLAIMS AND DEFENDANTS

As stated above, Plaintiff's claims against Defendants Martin, Clark, and McFarlin for deliberate indifference to his medical needs and state law negligence are not due to be dismissed at this time. The Court provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## <u>INSTRUCTIONS TO DEFENDANTS</u>

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to defendants by first-class mail and request that defendants waive formal service of summons. Fed. R. Civ. P. 4(d); Local R. 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until60 days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of Plaintiff upon oral examination. Fed. R. Civ. P. 30(a)(2). Defendants are further advised that the Court's standard 140-day discovery period will commence upon the filing of the last answer. Local R. 26.1. Defendants shall ensure that all discovery, including Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the

deposition and advise him that he may serve on Defendants, in a sealed envelope, within 10 days of the notice of deposition, written questions Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition.  Fed. R. Civ. P. 30(c).

## **INSTRUCTIONS TO PLAINTIFF**

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorney, a copy of every further pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel.  Fed. R. Civ. P. 5.  "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number."  Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action.  Local R. 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case.  For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 *et seq.*  The discovery period in this case will expire 140 days after the filing of the last answer.  Local R. 26.1.  Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period.  Id.  Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in

connection with a motion or response, and then only to the extent necessary; and when needed for use at trial.  Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons.  <u>See</u> Fed. R. Civ. P. 33.  Interrogatories may be served only on a <u>party</u> to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not <u>named</u> as a defendant.  Interrogatories are not to contain more than 25 questions.  Fed. R. Civ. P. 33(a).  If Plaintiff wishes to propound more than 25 interrogatories to a party, Plaintiff must have permission of the Court.  If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.7.

Plaintiff has the responsibility for maintaining his own records of the case.  If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution.  Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which Defendants may initiate. Upon no less than five days' notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any

question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Defendants may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both. Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion. Local R. 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any

16

material fact in this case.  That burden cannot be carried by reliance on the conclusory allegations contained within the complaint.  Should Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest Defendants' statement of the facts.  Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 1st day of November, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA