IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

TIMOTHY TIMMONS,

    Plaintiff,

v.

KATHY MARTIN; ANDREW MCFARLANE; and CLARK,

    Defendants.

CIVIL ACTION NO.: 6:17-cv-116

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. Doc. 57. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

### BACKGROUND

Plaintiff brought this 42 U.S.C. § 1983 action relating to his conditions of confinement at Smith State Prison. Doc. 1. Because Plaintiff's initial Complaint was unclear, the Court ordered Plaintiff to submit an Amended Complaint. Doc. 8. Plaintiff submitted an Amended Complaint, but the Amended Complaint was still unclear. Doc. 9. Thus, the Court ordered Plaintiff to submit a Second Amended Complaint. Doc. 12. Plaintiff complied and submitted a Second Amended Complaint. Doc. 13. After conducting frivolity review, the Court found Plaintiff stated plausible deliberate indifference and state-law negligence claims against Defendants. Doc. 14. Plaintiff then filed a Motion to Amend, which the Court granted. Docs. 25, 47. Plaintiff then submitted a Third Amended Complaint, which is now the operative Complaint in

this case.¹  Doc. 48.  In terms of relief, Plaintiff seeks only compensatory and punitive damages in his Third Amended Complaint.  Id. at 11.

The Court granted in part a motion to dismiss filed by Defendants and dismissed Plaintiff's state-law negligence claims.  Doc. 49.  Thus, the only remaining claims are deliberate indifference claims against Defendants Martin, Clark, and McFarlane.  Defendants filed their Motion for Summary Judgment on January 15, 2021.  Doc. 57.  Plaintiff responded, albeit untimely.²  Doc. 62.  Although Plaintiff was originally proceeding in this action pro se, he recently retained and is currently represented by counsel.  Doc. 66.

---

¹ "As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading." Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Can., 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982).  The Court notes Plaintiff cites to his original complaint as a source of evidence in his Response because it is a sworn complaint.  Doc. 68 at 1.  However, Plaintiff's Third Amended Complaint, the only operative complaint in this case, is not a sworn complaint.  Doc. 48.  The Third Amended Complaint does not specifically refer to or adopt the original complaint.  Id.  Because the Third Amended Complaint supersedes and replaces all other complaints, including the original complaint, Plaintiff cannot properly rely on the original complaint as evidence.  Moreover, the Court also explained in its summary judgment notice that, in responding to a properly supported motion for judgment, a plaintiff "may not rest on the allegations in your pleadings alone."  Doc. 58.

² Plaintiff filed this suit on September 6, 2017, and Defendants first appeared in this action in early 2020.  Discovery began more than a year ago.  Defendants filed the instant Motion for Summary Judgment on January 15, 2021, in accordance with the Court-imposed deadline for filing such motions.  Plaintiff, proceeding pro se, asked the Court to extend the deadline for his response.  The Court granted that request, setting February 19, 2021, as the new deadline, doc. 62, but Plaintiff failed to file a timely response.  Plaintiff's attorney entered an appearance on February 24, 2021, and filed Plaintiff's untimely Response the same day.  Docs. 66, 67, 68.  Plaintiff offers somewhat of an explanation for the delay in a letter dated February 18, 2021, explaining his placement in administrative segregation hindered his ability to respond.  However, in his actual Response to the Motion for Summary Judgment, Plaintiff does not address the untimeliness at all, only noting counsel has "recently been retained." Doc. 68 at 8.  In light of these circumstances, the Court will consider Plaintiff's untimely Response.

2

**UNDISPUTED MATERIAL FACTS**[3]

Plaintiff is a prisoner who is incarcerated at Georgia State Prison. Doc. 57-1 at 1; Doc. 67 at 1. Plaintiff's claims in this case concern events occurring between December 2015 and July 2016. During that time, Plaintiff was incarcerated at Smith State Prison. Doc. 57-1 at 1; Doc. 67 at 1. During the relevant period, Defendant Kathy Martin was an intake officer at Smith State Prison, Defendant Lee Clark was a Deputy Warden of Care and Treatment at Smith State Prison, and Defendant Andrew McFarlane was a unit manager at Smith State Prison. Doc. 57-1 at 1; Doc. 67 at 1–2.

Plaintiff's claims concern Defendants' actions related to Plaintiff's medical profiles. At the outset, some of the relevant terminology warrants explanation. A "special sleeping arrangement" or "low-bunk" or "bottom-bunk" restriction means the inmate needs special bedding or should be assigned to a lower bunk due to neurological disorder or inability to climb to a higher bunk. Doc. 57-3 at 22. However, a "lower-range" or "lower-tier" restriction for all activities means the inmate may need a special housing assignment, due to the presence of a neurological condition or other deficit. Id. Specifically, a "lower-range" or "lower-tier" restriction may mean the inmate should be assigned to a first-floor cell. Id.

Starting in 2015 while confined at Smith State Prison, Plaintiff experienced chronic pain.[4] Doc. 57-1 at 2; Doc. 67 at 2. In November 2015, Plaintiff was transferred from Smith State Prison (apparently to the Sumter LEC facility) for a court proceeding. Doc. 57-1 at 2; Doc.

---

[3] The recited facts represent the facts in the record and draw all reasonable inferences in the light most favorable to Plaintiff, the non-moving party. See Peppers v. Cobb Cnty, 835 F.3d 1289, 1295 (11th Cir. 2016).

[4] The parties fail to adequately explain the nature or origin of Plaintiff's medical issues. However, based on a review of the documents submitted, the Court can conclude Plaintiff suffered some sort of back injury. Plaintiff stated in his deposition he had back surgery at some point and implied the source of his lower back and leg problems result from a pinched nerve. Doc. 57-4 at 18, 20.

67 at 3. While at the Sumter facility, Plaintiff was given a "bottom-bunk" and "bottom-tier" profile for a "back injury," which was to last until he was evaluated by another healthcare provider. Doc. 1-1 at 11.

Plaintiff returned to Smith State Prison on December 22, 2015. Id. at 12. Upon re-entering Smith State Prison, Plaintiff was assigned to a top bunk in a top-tier cell. Doc. 57-1 at 2; Doc. 67 at 3. On December 29, 2015, Plaintiff saw Dr. Gardner and was issued a bottom-bunk profile. Doc. 1-1 at 15; Doc. 57-1 at 2; Doc. 67 at 2–3. The December 29, 2015 profile states "no climbing" but makes no reference to a "range" or "tier" assignment. Doc. 1-1 at 15.

On January 12, 2016, Plaintiff was seen again in the Smith State Prison medical unit. Doc. 57-1 at 3; Doc. 67 at 3. Plaintiff requested his medical profiles be honored at the appointment. Doc. 57-1 at 3; Doc. 67 at 3. At the medical appointment, a correctional officer indicated Plaintiff had been offered a bottom bunk the week before, but Plaintiff refused the lower bunk. Doc. 57-1 at 3; Doc. 67 at 3. Plaintiff does not dispute he was offered, but declined, the offered lower bunk. Doc. 67 at 3. Regardless, immediately after the January 12, 2016 medical appointment, Plaintiff was transferred to a bottom bunk in the same cell where he was housed previously. Doc. 57-1 at 3; Doc. 67 at 3.

Plaintiff was assigned a "lower range housing" profile on June 8, 2016. Doc. 1-1 at 20. On June 27, 2016, Plaintiff suffered a fall on the stairs at Smith State Prison after returning from an outside medical appointment. Doc. 57-1 at 3; Doc. 67 at 3. On July 7, 2016, Plaintiff was assigned a bottom bunk in a lower-range cell. Doc. 57-1 at 3 (citing Plaintiff's deposition testimony, Doc. 57-4 at 81); Doc. 67 at 4. On a medical profile dated July 12, 2016, a provider listed "no climbing, lower range" for Plaintiff. Doc. 57-3 at 34. Plaintiff was transferred away from Smith State Prison soon thereafter. Doc. 57-1 at 3; Doc. 67 at 4.

In sum, Plaintiff's precise medical issues are unclear, but it is undisputed he received various medical profiles during the relevant time period. In November 2015, Plaintiff was assigned a bottom-bunk, bottom-tier profile at Sumter LEC. Doc. 1-1 at 11. Plaintiff returned to Smith State Prison on December 22, 2015. Doc. 57-4 at 41. He was assigned to a top bunk and a top-tier cell, so he sought reassignment, consistent with the Sumter LEC profile. Doc. 57-4 at 34–41. Plaintiff was seen by medical staff on December 29, 2015, and was assigned a bottom-bunk and "no climbing" profile. Doc. 1-1 at 15. Sometime in early January 2016, Plaintiff was offered a lower bunk in a top-tier cell, and he refused it. Doc. 57-1 at 3; Doc. 67 at 3. Plaintiff was seen by medical staff again on January 12, 2016, at which time he again requested reassignment. Doc. 57-1 at 3; Doc. 67 at 3. Plaintiff was promptly reassigned to a bottom bunk but remained in a top-tier cell. Doc. 57-1 at 3; Doc. 67 at 3. Plaintiff fell on the stairs on June 27, 2016, more than six months after he returned to Smith State Prison. Doc. 57-1 at 3; Doc. 67 at 3. Plaintiff was ultimately given a bottom-bunk, bottom-tier profile, and he was reassigned consistent with that profile. Doc. 57-1 at 3; Doc. 67 at 4.

## DISCUSSION

Plaintiff asserts essentially three theories of deliberate indifference. First, he contends Defendants were deliberately indifferent to his serious medical needs by failing to honor his November 2015 bottom-bunk, bottom-tier profile between December 22, 2015 (when he returned to Smith State Prison) and December 29, 2015 (when he was re-evaluated by medical staff at Smith State Prison). Doc. 68 at 3. Second, Plaintiff alleges Defendants were deliberately indifferent between December 29, 2015 (when Plaintiff received his lower-bunk profile at Smith State Prison) and some date in early January 2016, when Plaintiff was first offered—but refused—a lower bunk. Id. Third, he contends Defendants were deliberately indifferent in

failing to provide Plaintiff a lower-tier cell assignment from December 29, 2015 until July 2016, because his medical profile implied a lower-tier profile by imposing a "no climbing" restriction and because his medical condition required such an assignment. Id.

Defendants seek summary judgment on Plaintiff's claims, arguing they are entitled to judgment as a matter of law because there is no evidence supporting any of the elements of a deliberate indifference claim. Doc. 57-2 at 4–8. Defendants alternatively argue they are entitled to qualified immunity on Plaintiff's claims. Id. at 8–9. In his Response, Plaintiff argues there is evidence to support each element of his deliberate indifference claim and—at least, ostensibly— that Defendants violated Plaintiff's clearly established constitutional rights. Doc. 68.

## I. Qualified Immunity

### A. Legal Standard

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or one who is knowingly violating the federal law." Carter v. Butts Cnty., 821 F.3d 1310, 1319 (11th Cir. 2016).

In order to establish the affirmative defense of qualified immunity, the defendant must first show he acted within the scope of his discretionary authority when the wrongful acts occurred. Id. Once the defendant establishes he acted within his discretionary authority, the burden shifts to plaintiff to show qualified immunity is inappropriate. Id. To satisfy his burden of proving qualified immunity is inapplicable, the plaintiff must show (1) defendant violated a constitutional right, and (2) the right was clearly established at the time of the constitutional

violation. Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir. 2010) (citing Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)). The Court may analyze these requirements in any order and may find qualified immunity applies due to Plaintiff's failure to show the right was clearly established without first concluding a constitutional violation occurred. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

When determining whether a right was clearly established, the central inquiry is whether the state of the law gave the defendant a fair warning his conduct was unconstitutional at the time. Patel v. Lanier Cnty., 969 F.3d 1173, 1186 (11th Cir. 2020). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." J.W. v. Birmingham Bd. of Educ., 904 F.3d 1248, 1259–60 (11th Cir. 2018) (quotation omitted). A plaintiff can satisfy his burden of showing the right is clearly established by: (1) pointing to "a materially similar case decided at the time of the relevant conduct by the Supreme Court, the Eleventh Circuit, or the relevant state supreme court," (2) identifying "a broader, clearly established principle that should govern the novel facts of the situation," or (3) showing "the conduct at issue is so obviously violated the Constitution that prior case law is unnecessary." Id.

**B.     Analysis**

Defendants contend they acted within the scope of their discretionary authority because they "were acting within their duties as officials employed at a GDC facility . . . ." Doc. 57-2 at 9. Plaintiff does not dispute Defendants were acting within their discretionary authority.[5] Doc. 68 at 8. Thus, the burden shifts to Plaintiff to show qualified immunity is inappropriate.

---

[5] Furthermore, it is undisputed Defendant Martin was an intake officer at all times pertinent to Plaintiff's Complaint; Defendant Clark was a Deputy Warden of Care and Treatment at all times pertinent to Plaintiff's Complaint; and Defendant McFarlane was a unit manager at all times pertinent to Plaintiff's Complaint. Doc. 57-1 at 1; Doc. 67 at 1–2. These facts demonstrate Defendants were acting within their discretionary authority in performing the actions at issue in this case.

Notably, Plaintiff devotes one sentence of his brief to arguing Defendants violated clearly established law: "Suffice it to say that [Estelle v. Gamble, 429 U.S. 97 (1976),] and [Campbell v. Beto, 460 F. 2d 765 (5th Cir. 1972),] are clearly established and [Martinez v. Mancusi, 443 F. 2d 921 (2d Cir. 1970),] (having been favorably cited in Estelle) is also clearly established law." Doc. 68 at 8.

Plaintiff has not satisfied his burden to show qualified immunity should not apply here. Considering the specific context of this case, the relevant inquiry is whether the state of the law gave Defendants fair warning that failing to assign Plaintiff to a bottom bunk in a bottom floor cell in these circumstances was unconstitutional.[6] Neither Estelle nor Campbell would have given Defendants a fair warning their conduct was unconstitutional. Patel, 969 F.3d at 1186. Such a warning cannot be found in any prior case law Plaintiff cites, and the conduct at issue in this case is not obviously unconstitutional.

The binding cases cited by Plaintiff stand for the general proposition prison officials violate the Eighth Amendment by intentionally interfering with medical treatment once prescribed. However, the "clearly established" inquiry should be conducted "in light of the specific context of the case, not a general proposition." J.W., 904 F.3d at 1260. In Estelle, the United States Supreme Court considered whether a prisoner stated a plausible claim against

---

[6] Because of the limited briefing submitted in this case, it is unclear to the Court at times which facts are disputed and which are undisputed. The Court has reviewed the record in full, even outside the citations presented by Plaintiff. Plaintiff at most asserts he was denied a bottom bunk and bottom tier cell in violation of his medical profiles from November 2015 until July 2016. Doc. 68 at 3. Plaintiff states in his deposition he directly alerted Defendants of his profiles and his need for a bottom bunk and bottom tier cell on various occasions. Doc. 57-4 at 34–41. It also appears to be undisputed Plaintiff was issued a lower range housing profile in early June 2016, yet Plaintiff was not assigned to a bottom floor cell until July 2016 after his fall. Doc. 1-1 at 20; Doc. 57-1 at 3; Doc. 67 at 4. Plaintiff asserts he fell down the stairs due to Defendants' failure to honor the bottom-floor-cell profile. See Doc. 68 at 2. Even considering all of these facts in the light most favorable to Plaintiff, Plaintiff has not pointed to any even remotely similar case law that would have put Defendants on notice their conduct was unconstitutional.

8

prison officials when he sustained a back injury as a result of a prison work assignment and later suffered from cardiac issues. 429 U.S. at 98–101. When summarizing the plaintiff's allegations, the Court noted in passing prison authorities did not comply with a doctor's directive to move him from a top bunk to a lower bunk. Id. at 99. The Court concluded, "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' . . . proscribed by the Eighth Amendment." Id. at 104. The Court elaborated a prison guard can violate this right by "intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." Id. at 104–05. The Court ultimately concluded the plaintiff failed to state an Eighth Amendment claim against the doctors who treated him on numerous occasions. Id. at 108. However, the Court remanded the case back to the Fifth Circuit to consider whether the plaintiff stated a plausible cause of action against non-medical prison officials. Id. On remand, the Fifth Circuit concluded the plaintiff did not state a viable Eighth Amendment claim against the prison officials after considering the new standard set forth by the Supreme Court. Gamble v. Estelle, 554 F.2d 653, 654 (5th Cir. 1977).

Campbell was decided prior to the Supreme Court directly determining deliberate indifference to a serious medical need violates the Eighth Amendment. Plaintiff does not elaborate on his reliance on Campbell but notes Campbell was favorably cited in a footnote in Estelle.[7] Doc. 68 at 4. In Campbell, the Fifth Circuit considered whether a prisoner stated a viable § 1983 claim when he alleged he was refused access to prescribed medication and access to a doctor for his heart condition and was instead assigned to hard labor. 460 F.2d at 766–67. Plaintiff alleged he suffered a heart attack as a direct result of these actions by prison officials.

---

[7]      In Estelle, the Supreme Court cited to Campbell as one example of an instance where a deliberate indifference claim arose from prison guards intentionally interfering with an inmate's prescribed medical treatment. 429 U.S. at 105 n.12.

9

Id. at 767.  The Fifth Circuit held the district court erred in dismissing the case because the plaintiff stated a possible constitutional violation.  Id. at 769.

Estelle and Campbell are not materially similar to the case at hand.  In Estelle, the Supreme Court determined the plaintiff did not state a viable Eighth Amendment claim against the medical defendants, and the Fifth Circuit determined on remand the plaintiff also did not state viable claims against the nonmedical defendants.  429 U.S. at 108; 554 F.2d at 654.  Thus, Estelle is not helpful to Plaintiff as a materially similar case that would have put Defendants on notice their conduct was unconstitutional.  Instead, Estelle is only relevant to the extent it creates broad, general principles of law.  Although the Supreme Court did mention the plaintiff was denied a bottom bunk at some point by prison authorities, the Fifth Circuit's decision upon remand indicates the court found this allegation insufficient to state an Eighth Amendment violation.  429 U.S. at 99; 554 F.2d at 654.  Campbell is dissimilar, because the case involved an outright denial of prescribed medication and access to a doctor.  460 F.2d at 766–67.  Campbell did not involve the failure to accommodate medical profiles concerning a cell or bunk assignment like those at issue here.

Plaintiff also cites a non-binding district court case, Jones v. Evans, 544 F. Supp. 769 (N.D. Ga. 1982), in support of his argument.  Doc. 68 at 4.  A district court case is insufficient to put a defendant on notice of clearly established law.[8]  See, e.g., J.W., 904 F.3d at 1259–60

---

[8]  Even if Jones were binding, the case would not provide Defendants with a fair warning their conduct was unconstitutional.  In Jones, a prison official intentionally confiscated a prescribed medical device—a back brace—from a prisoner.  544 F. Supp. at 772.  The case did not involve a failure to accommodate a bottom-bunk or bottom-floor-cell profile as here.  Outside of the qualified immunity section of his brief, Plaintiff cites to another district court decision insufficient to show Defendants violated clearly established law: Kennedy v. Johns, No. 5:18-CV-27, 2020 WL 249436 (S.D. Ga. Jan. 15, 2020).  Doc. 68 at 6.  Although a decision of this Court, Kennedy involved radically different facts than those presented in this case.  At the frivolity review stage, this Court found the plaintiff alleged a plausible deliberate indifference claim because a prison official confiscated his prescribed wheelchair.

10

("[T]he plaintiff can point to a materially similar case . . . by the Supreme Court, the Eleventh Circuit, or the relevant state supreme court."). Likewise, a district court case from another district is not binding on this Court even outside of the qualified immunity framework, nor are decisions of the Second Circuit Court of Appeals, to which Plaintiff also cites. Doc. 68 at 4, 8 (citing Martinez v. Mancusi, 443 F.2d 921 (2d Cir. 1970)). Plaintiff implies Second Circuit authority can be binding within the Eleventh Circuit when cited favorably by the United States Supreme Court. Id. The Court does not find this argument persuasive. The Court notes a prison official in this Circuit would not be on notice that Second Circuit authority directly governs his conduct, especially when the Supreme Court only mentioned the case in passing footnotes. Estelle v. Gamble, 429 U.S. at 104–05 nn.10, 12. Equally important, Martinez would not have provided "fair notice" to Defendants their conduct was unconstitutional, even if it were binding. Martinez involved extreme facts, which are vastly different from the facts of this case. In Martinez, prison officials deliberately removed plaintiff from the hospital following a delicate surgery without a doctor's discharge and forced him to walk contrary to surgeons' directions. 443 F.2d at 923–24. The facts in Martinez are nothing like the bunk and cell assignments in this case.

The Court is unaware of any other roughly analogous case law not cited by Plaintiff which would have put Defendants on notice their failure to honor these medical profiles was unconstitutional. In fact, case law indicates a failure to honor a bunk profile does not amount to deliberate indifference. See, e.g., Redding v. Georgia, 557 F. App'x 840, 844 (11th Cir. 2014) ("It may have been negligent to assign Redding a bunk contrary to his profile, but an Eighth

---

Kennedy, 2020 WL 249436 at *5. Kennedy, again, did not involve a failure to implement bunk or cell assignment profiles like those at issue here.

Amendment claim requires conduct rising to a level above even gross negligence."); Burley v. Upton, 257 F. App'x 207, 210 (11th Cir. 2007) (holding a failure to transfer inmate to a bottom bunk for five days, which resulted in an injurious fall, was mere negligence absent evidence showing intent).

Plaintiff has also not demonstrated broad principles governing deliberate indifference claims, as discussed in Estelle and Campbell, should apply to the novel circumstances of this case. Plaintiff is correct that Estelle stands for the general principle a prison official violates the Eighth Amendment by "intentionally interfering with treatment once prescribed." 429 U.S. at 104–05. However, it would not necessarily be apparent to a prison official that a failure to accommodate a bottom-bunk or bottom-floor-cell medical profile qualifies as "treatment" by a medical professional as discussed in Estelle. Id.; see Sanderson v. Green, No. CV310-040, 2011 WL 1226212, at *4 (S.D. Ga. Feb. 18, 2011) (granting qualified immunity when plaintiff alleged deliberate indifference due to officials' failure to honor his bottom-bunk profile). A medical profile recommending a certain bunk or cell type is significantly different from an intentional denial of access to medication or a doctor to treat a known medical condition. See Sanderson, 2011 WL 1226212, at *4. Additionally, Plaintiff has not explained why this general principle of law would have put Defendants on notice they should have honored a medical profile issued by a previous institution or that they should have known a "no climbing" profile required a bottom floor cell. For these reasons, a prison official would not know the failure to honor a bottom-bunk or bottom-tier cell profile constitutes deliberate indifference to a serious medical need under the Eighth Amendment, especially not in the context of the novel facts presented in this case. For similar reasons, Defendants' conduct was not obviously unconstitutional. Because Plaintiff has not met his burden of showing Defendants violated clearly established law, Defendants are

entitled to qualified immunity. Therefore, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment. Because I recommend the Court grant Defendants' Motion on the basis of qualified immunity, I also **RECOMMEND** the Court decline to address the remaining grounds of Defendants' Motion.[9]

## II. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues at this time. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka,

---

[9] Buried in the "Conclusion" paragraph of Plaintiff's Response to Defendants' Motion for Summary Judgment, Plaintiff states, "Counsel has only recently been retained, has been unable to see any records beyond those filed by the Court, has been able to do no discovery and respectfully requests the reopening of discovery, so he can represent his client adequately." Doc. 68 at 8. The Court will not reopen discovery at such a late date on such a threadbare request. Additionally, this Recommendation rests on Plaintiff's failure to demonstrate Defendants violated clearly established law. It is difficult to conceive of any way in which a lack of discovery hindered Plaintiff's ability to sufficiently address this issue, and Plaintiff has not described any hinderance here.

13

314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's claims and Defendants' Motion, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A

party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 5th day of March, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA